* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Glenn. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Glenn with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Plaintiff's average weekly wage was such that it yields the maximum compensation rate at the time of plaintiff's injury by accident.
2. At all times relevant to this matter, an employer-employee relationship existed between employee-plaintiff and employer-defendant.
3. Defendant-employer was insured by ESIS, Inc. for workers' compensation at all times relevant herein.
4. Plaintiff's claim was accepted as compensable under the laws of the State of South Carolina and defendants have paid compensation, both indemnity and medical compensation, since his injury.
 * * * * * * * * * * *
All stipulations that have been submitted by the parties are hereby incorporated by reference as though they were fully set out herein.
 * * * * * * * * * * *
Based upon all the competent evidence introduced at the hearing, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 33 years old. The plaintiff is a resident of Boiling Springs, North Carolina. Defendant-employer is a corporation with its principle place of business in Norfolk, Virginia.
2. The defendant-employer supplies labor for industrial facilities, particularly, power generating nuclear plants and it maintains a list of potential employees from which it selects employees for the various jobs it fills for its clients. A potential employee has to be recommended to defendant-employer before they are considered to be added to its list of employees. Defendant-employer had contacted plaintiff in 2003 to work as an electrician at plants in North Carolina and South Carolina.
3. The defendant-employer's initial contact with the plaintiff was made by telephone by one of defendant-employer's recruiters to plaintiff's residence in Boiling Springs, North Carolina sometime in late 2002 or early 2003. The recruiter told plaintiff specifics about the job such as the location, what he would be doing, the hours of work, the pay, the start date, the completion date, the benefits he would be receiving, the test he would have to pass and the other requirements of the job. The plaintiff expressed interest in the job to defendant-employer's recruiter. The recruiter then asked plaintiff if he accepted the job offer. Plaintiff accepted the job. After plaintiff accepted the job over the telephone, defendant-employer sent the application and other paperwork to plaintiff at his home in North Carolina. Plaintiff completed the paperwork and returned it to defendant-employer.
4. On February 17, 2003, plaintiff reported to the Catawba Station. He arrived with a large number of other employees of defendant-employer. Plaintiff then had to complete more paperwork, including some of the same paperwork he had previously sent to defendant-employer. A representative of defendant-employer was on site and reviewed the paperwork. He then faxed it to defendant-employer's headquarters in Norfolk, Virginia. Plaintiff and others sat for a couple of days doing very little. On the third day of employment, plaintiff was instructed as to safety associated with working in a nuclear station. He then took a test on this information. Plaintiff was also required to complete a drug test. On the fifth day, February 21, 2003, plaintiff was approved to enter the plant and he began working.
5. Plaintiff completed the job assignment at Catawba Station on March 14, 2003. At about the same time, defendant-employer contacted plaintiff at his home in North Carolina to ask whether he would be interested in working another outage. The terms of the employment were discussed over the telephone, the recruiter offered the job to plaintiff and plaintiff accepted the position over the phone. As before, after plaintiff accepted the position, defendant-employer then sent the same paperwork to plaintiff at his home in North Carolina as previously for plaintiff to complete. Plaintiff completed the paperwork in North Carolina and was advised by phone to report to Catawba Station on March 31, 2003.
6. On March 31, 2003, plaintiff reported to the Catawba Station and went through the same procedures as he had on the previous job. He completed the same paperwork, spent the same amount of time waiting, and did the same drug test. On April 4, 2003, he began working in the plant. This job assignment ended on August 28, 2003.
7. While still working on the Catawba assignment, plaintiff was contacted at his home in North Carolina about an outage in North Carolina. A representative of defendant-employer called plaintiff, at his home in North Carolina, to discuss the job, set forth the terms and determine if he was interested and then offered the job to plaintiff. Plaintiff agreed to the terms and accepted the assignment. Defendant-employer sent plaintiff the very same paperwork that he had previously completed. He then reported to the McGuire Plant in North Carolina. He went through the same process of redoing paperwork and all testing. He began working inside the McGuire facility within a couple of days.
8. Following the McGuire assignment, defendant-employer contacted plaintiff at his home in North Carolina to ask whether he would be interested in working another outage at the Catawba Plant. The terms of the employment were discussed and plaintiff accepted the employment over the telephone. Again, thereafter, defendant-employer sent the same paperwork to him in North Carolina that plaintiff had previously received. He completed the paperwork at his home in North Carolina and was advised by phone to report to Catawba Station on October 27, 2003.
9. Plaintiff reported to the Catawba Station and went through the same procedures as he had on the previous jobs. He completed the same paperwork, spent the same amount of time waiting, and did the same drug test. On October 31, 2003, he began working in the plant. This job assignment ended on December 4, 2003.
10. Defendant-employer contacted plaintiff at his home in North Carolina and asked whether he would be interested in working an outage at Catawba commencing on April 5, 2004. The terms of the employment were discussed over the telephone, the job was offered to plaintiff in North Carolina and plaintiff accepted the assignment over the telephone while he was at home in North Carolina. As previously done, defendant-employer sent the same paperwork to plaintiff in North Carolina after he had accepted the position over the telephone in North Carolina that had been completed for the four previous assignments. Plaintiff arrived at the plant on April 5, 2004 and went through the same process of completing paperwork and doing testing. Plaintiff began working in the plant on April 9, 2004.
11. On August 16, 2004, plaintiff was electrocuted while working for defendant-employer. Plaintiff has been unable to work since that time.
12. Plaintiff testified at the hearing before the Deputy Commissioner that when he received the call from defendant-employer at his home in North Carolina, he understood this to be an offer of employment.
13. Mr. Bill Engleking worked for defendant-employer from April of 1983 until March 19, 2003 as a division manager. Mr. Engleking was in charge of providing the specific employment needs to the recruiters that were required for any particular outage.
14. Mr. Engleking testified that he was aware of how recruiters obtained employees and that he knew this because he worked out of corporate headquarters and he worked very closely with recruiters in staffing needs. He knew exactly how the system worked and that defendant-employer's process of hiring new employees was for the recruiters to call the workers at their homes and communicate with them about a job. Mr. Engleking further testified that they communicate pay rates, start dates, etc. and that the purpose of the calls was to determine if they were interested in employment.
15. Mr. Engleking testified that employment offers were conveyed over the phone and that no paper work was generated until after the position was accepted, that if the person did not accept the position offered that no documents would have been prepared and sent to the employee, they would simply call the next person on the list until the position was accepted.
16. The competent evidence in the record establishes that the plaintiff and defendant-employer reached an agreement for plaintiff to be employed by defendant-employer as they spoke via telephone while plaintiff was at his home in North Carolina. The competent evidence in the record further establishes that defendant-employer made plaintiff an offer of employment with defendant-employer, which the plaintiff accepted over the telephone at his home in North Carolina.
17. The Full Commission finds that because plaintiff's contract of employment was made in North Carolina, the North Carolina Industrial Commission has jurisdiction over plaintiff's claim, pursuant to N.C. Gen. Stat. § 97-36, even though plaintiff's injury occurred in South Carolina.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Commission has jurisdiction over the instant matter under N.C. Gen. Stat. § 97-36, which provides, in pertinent part:
 Where an accident happens while the employee is employed elsewhere than in this State and the accident is one which would entitle him or his dependents or next of kin to compensation if it had happened in this State, then the employee or his dependents or next of kin shall be entitled to compensation (i) if the contract of employment was made in this State, (ii) if the employer's principal place of business is in this State, or (iii) if the employee's principal place of employment is within this State[.]
In this matter, the plaintiff was working in South Carolina on August 16, 2004, but plaintiff accepted defendant-employer's offer of employment over the telephone in his home in North Carolina. Consequently, plaintiff's contract for employment was made in North Carolina. To determine where a contract for employment was made, the Commission applies the "last act" test.Thomas v. Overland Express, Inc., 101 N.C. App. 90, 96,398 S.E. 2d 921, 926 (1990), disc. rev. denied, 328 N.C. 576,403 S.E. 2d 522 (1991). The last act test requires that for a contract to be made in North Carolina, the final act necessary to make the contract a binding obligation must be done in North Carolina. Id. In Murray v. Ahlstrom Industrial Holdings, Inc.,131 N.C. App. 294, 506 S.E. 2d 724 (1998), the Court of Appeals held that where an out-of-state employer telephoned the plaintiff to offer him a job and the plaintiff accepted on the telephone, the contract was completed by the plaintiff's acceptance and the employer telling the plaintiff to report to work immediately at the out-of-state location and was the last act occurring in North Carolina, to make the contract binding. Likewise, here, the evidence shows that plaintiff and defendant-employer entered a contract for employment over the telephone in plaintiff's home in North Carolina. Therefore, the last act to make the contract binding was plaintiff's acceptance of defendant-employer's offer of employment via telephone.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The North Carolina Industrial Commission has jurisdiction in this matter and the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Defendants shall pay the costs of this action.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_________________ CHRISTOPHER SCOTT COMMISSIONER